IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| THORNBURG MORTGAGE, INC., *et al.*,[1] | ) ) ) | Case No. 09 -17787 (DWK) |
| Debtors. | ) ) ) | (Joint Administration Requested) |

**APPLICATION FOR AUTHORITY TO RETAIN
HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS
INVESTMENT BANKER FOR ADFITECH SALE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move this Court for entry of an order, substantially in the form of the proposed order attached hereto (the "Proposed Order") authorizing the employment and retention of Houlihan Lokey Howard & Zukin Capital Inc. as investment banker for the sale of ADFITECH, Inc. ("Adfitech") pursuant to sections 327(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Application, the Debtors rely on the Affidavit of Bradley Jordan (the "Jordan Affidavit") attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent as follows:

**Jurisdiction**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases are: (i) Thornburg Mortgage, Inc., (ii) ADFITECH, Inc., (iii) Thornburg Acquisition Subsidiary, Inc., (iv) Thornburg Mortgage Home Loans, Inc., and (v) Thornburg Mortgage Hedging Strategies, Inc.

2.      The statutory bases for the relief requested is sections 327(a), 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2014(a)

**Background**

3.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

4.      Thornburg Mortgage, Inc. ("TMA") is a Maryland corporation that conducts its operations as a real estate investment trust (a "REIT") for federal income tax purposes. Until it was delisted in December of 2008, the common stock of TMA was traded on the New York Stock Exchange. The remaining Debtors are wholly-owned direct or indirect subsidiaries of TMA.

5.      A description of the Debtors' businesses and the reasons for filing these chapter 11 cases are set forth in the Declaration of Clarence G. Simmons, III, Chief Financial Officer of Thornburg Mortgage, Inc., et. al., in Support of First Day Motions (the "First Day Declaration"), which was filed contemporaneously with this motion and is incorporated herein by reference.[2]

**Relief Requested**

6.      In connection with the performance of their duties and obligations as debtors in possession, the Debtors request authority to employ Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") as their investment banker to assist them in the critical tasks

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the First Day Declaration.

associated with analyzing and implementing the possible courses of action available with respect to the sale of the business of the Debtor Adfitech.  Adfitech is an independently-operated wholly-owned subsidiary of the Debtor Thornburg Mortgage Home Loans, Inc. ("TMHL") that operates from offices in Edmund, Oklahoma and provides mortgage-related auditing and quality control consulting services to financial institutions.

7. The Debtors also request that the Court approve payment of compensation to Houlihan Lokey pursuant to section 328(a) of the Bankruptcy Code on the terms set forth in the March 16, 2009 letter from James P. Murray and David R. Hilty to Larry A. Goldstone and Thomas Apel attached hereto as Exhibit B (the "Engagement Letter").

8. Under sections 327 and 328 of the Bankruptcy Code, a debtor in possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist such parties in carrying out their duties under the Bankruptcy Code.  Specifically, section 327(a) of the Bankruptcy Code provides that a such debtor, subject to Court approval, may:

> employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out the [debtors'] duties under this title.

11 U.S.C. § 327(a).  Bankruptcy Rule 2014 requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other parties in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Fed. R. Bankr. P. 2014.  Each of the Rule 2014 requirements are addressed in the following paragraphs.

**Necessity**

9. The Debtors have selected Houlihan Lokey as their investment banker based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm to provide services regarding the sale of Adfitech and (b) Houlihan Lokey's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases. On March 16, 2009, the Debtors engaged Houlihan Lokey to provide services to the Debtors pursuant to the terms of the Engagement Letter. Since that time, Houlihan Lokey has developed a great deal of institutional knowledge regarding the Debtors' operations, capital structure, and systems. Such experience and knowledge will be valuable to the Debtors during these cases with regards to the sale of Adfitech. Accordingly, the Debtors wish to retain Houlihan Lokey to provide assistance with the sale.

**Reason for the Selection**

10. Houlihan Lokey is an international investment banking/financial advisory firm, with 11 offices worldwide and more than 700 employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas including financial restructuring. Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies, both inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, official creditor committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has over 100 professionals worldwide dedicated to providing restructuring and other financial advisory services. Houlihan Lokey's Financial Restructuring Group has advised on over 400 transactions, valued in excess of

$200 billion, over the past ten years. Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing skills, and mergers and acquisitions capabilities – some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement – were important factors in Houlihan Lokey's determination of the amount of its fees, and the Debtors agree with the fee structure in place.  The Debtors further believe that the ultimate benefit of Houlihan Lokey's services hereunder cannot be measured merely by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of services. In the period following its initial retention, Houlihan Lokey undertook substantial efforts on the Debtors' behalf regarding potential out-of-court restructuring actions and assisted the Debtors through negotiations with various creditor parties, pursuant to the terms of its Engagement Letter.  However, those negotiations ultimately proved unsuccessful and left the Debtors with a substantially smaller estate.  As a result, Houlihan Lokey's efforts going forward are expected to be focused on the sale of Adfitech.  Moreover, Houlihan Lokey has been actively marketing Adfitech to potential buyers for several weeks and has made substantial progress in that effort.

11. Houlihan Lokey and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Houlihan Lokey's employees have advised debtors, creditors, equity constituencies, and government agencies in many complex financial reorganizations. The professionals of Houlihan Lokey have been employed as investment bankers and/or financial advisers to the debtors in a number of large restructuring situations, including the following chapter 11 cases: In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re McLeodUSA, Inc., Case No. 05-63230

(JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y. June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec., 12 2002); In re Arthur D. Little, Case No. 02-41045 (HJB) (Ma. Bankr. Feb. 5, 2002); In re Covad Communications Group, Inc., Case No. 01-10167 (PJW) (Bankr. D. Del. Aug. 20, 2001); In re Ameriserve Food Dist., Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. Feb. 11, 2000); In re Stage Stores Inc., Case No. 00-35078 (WWS) (S.TX Bankr. June 9, 2002); In re Purina Mills. Inc., No. 99-3938 (SLR) (D. Del. Oct. 29, 1999). In addition, Houlihan Lokey has been involved in restructuring matters while representing official creditors committees in: In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008 and Dec. 17, 2008); In re Delta Air Lines Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 05, 2005); In re Refco Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Nov. 23, 2005); In re Tower Automotive, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Mar. 18, 2005); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 7, 2002); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 1, 2002).

## Professional Services To Be Rendered

12.     The services to be rendered regarding the sale of Adfitech by Houlihan Lokey within its assigned areas of responsibility will include, but not be limited to, the following:

- a. Assisting the Debtors in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), as defined in the Engagement Letter, including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

- b. Soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

    c.    Assisting the Debtors with the development, structuring, negotiation and implementation of any Transaction(s), including specifically a potential §363 sale or other Transaction involving Adfitech and also including participating as a representative of the Debtors in negotiations with creditors and other parties involved in any Transaction(s);

    d.    Assisting the Debtors in valuing the Debtors and/or, as appropriate, valuing the Debtors' assets or operations, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated by the Debtors;

    e.    Providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

    f.    Advising and attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors and Houlihan Lokey determine to be necessary or desirable; and

    g.    Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Debtors.

13.    The Debtors believe that Houlihan Lokey is well qualified and able to provide the foregoing services to the Debtors. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these cases. Specifically, Houlihan Lokey will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other professionals retained in these cases to avoid the unnecessary duplication of services. Houlihan Lokey has a willingness to act on behalf of the Debtors, on the terms described above and subject to the jurisdiction of the Court.

### Arrangements for Compensation

14.    Houlihan Lokey's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices. Subject to the Court's approval, and in

accordance with section 328(a) of the Bankruptcy Code, compensation to Houlihan Lokey will be paid pursuant to the terms of the Engagement Letter.[3] Specifically:

a. *Initial Fee*. In addition to the other fees provided for in the Engagement Letter, upon the date of the Engagement Letter the Debtors paid to Houlihan Lokey a nonrefundable cash fee of $500,000, which was earned on the date of the Engagement Letter in consideration of Houlihan Lokey accepting the employment (the "Initial Fee").

b. *Monthly Fees*: In addition to the other fees provided for in the Engagement Letter, upon the first monthly anniversary of the effective date of the engagement the Debtors shall pay Houlihan Lokey, upon invoice, an initial monthly cash fee of $350,000, and for each month thereafter a fee of $100,000 per month (collectively, the "Monthly Fee"). The Monthly Fee for the first month shall be paid April 16, 2009, and shall thereafter be paid on the 16th of each month thereafter upon invoice. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof. Notwithstanding any termination of the Agreement, the Debtors have agreed to pay Houlihan Lokey the Monthly Fee for a minimum of three months (3). In addition, 50% of all Monthly Fees after the first Monthly Fee shall be credited against the next Transaction Fee.

c. *Transaction Fees*: In addition to the other fees provided for in the Engagement Letter, the Company shall pay Houlihan Lokey one of the following transaction fee(s) depending on the nature of the Transaction(s) completed:

(i) *Sale Transaction Fee*: Upon the closing of each Sale Transaction, Houlihan Lokey shall earn, and the Debtors shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee of 3% of any gross sale proceeds subject to a minimum of $1,250,000.

(ii) *Restructuring Transaction Fee*: Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction; the consummation of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the date of confirmation of a plan of reorganization under chapter 11 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court, Houlihan Lokey shall earn, and the Debtors shall promptly pay to Houlihan Lokey, a cash fee of $1,250,000.

d. *Miscellaneous Expenses*: Houlihan Lokey will also seek reimbursement for reasonable out-of-pocket expenses incurred in connection with this engagement.

---

[3] Any capitalized terms not defined herein are accorded the meaning here as is afforded to them in the Engagement Letter.

15. Pursuant to the terms of the Engagement Letter, the Company has agreed:

a. to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Engagement Letter, Houlihan Lokey's engagement under the Engagement Letter, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with the Engagement Letter and

b. to reimburse each Indemnified Party for all reasonable out of pocket expenses (including, without limitation, the reasonable fees and reasonable out of pocket expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to the Engagement Letter, or such engagement, Transaction or actions. However, the Company shall not be liable under such foregoing indemnity and reimbursement agreement to the extent of any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith, fraud or gross negligence of such Indemnified Party.

16. The indemnity, reimbursement, and other obligations and agreements of the Company set forth in the Engagement Letter (a) shall apply to any services provided by Houlihan Lokey in connection with the engagement prior to the date of the Engagement Letter and to any modifications of the Engagement Letter, (b) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (c) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (d) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, the Engagement Letter.

17. The Debtors believe the indemnification, contribution and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for investment bankers such as Houlihan Lokey for proceedings both out of court and in chapter 11. The terms of the Engagement Letter were fully negotiated between the Debtors and Houlihan Lokey at arm's-length and the Debtors respectfully submit that the Engagement Letter is reasonable and in the best interests of the Debtors, their estates, and creditors.

18. Houlihan Lokey's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Houlihan Lokey's services hereunder cannot be measured by reference to the number of hours to be expended by Houlihan Lokey's professionals in the performance of such services. Indeed, the Debtors and Houlihan Lokey have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Houlihan Lokey and its professionals in connection with these cases and in light of the fact that (a) such commitment may foreclose other opportunities for Houlihan Lokey and (b) the actual time and commitment required of Houlihan Lokey and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Houlihan Lokey.

**Houlihan Lokey's Disinteredness**

19. To the best of the Debtors' knowledge, information, and belief, and based upon the Jordan Affidavit, Houlihan Lokey is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Prior to the Petition Date, the Debtors paid approximately $850,000 plus expenses in full payment of the Initial Fee and first Monthly Fee. Houlihan Lokey has received no other compensation from the Debtors pursuant to the Engagement Letter. As of the Petition Date, Houlihan Lokey did not hold a prepetition claim against the Debtors for fees or expenses related to services rendered in connection with the engagement.

20. As described in detail in the Jordan Affidavit, Houlihan Lokey has, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. Due to the size of Houlihan Lokey and the number of creditors and other parties in interest involved in this case, however, Houlihan Lokey may have represented certain of the Debtors' creditors or other parties in interest in matters wholly unrelated to this chapter 11 case. Except as may be described in the Jordan Affidavit, Houlihan Lokey does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or these estates. To the extent Houlihan Lokey discovers any facts bearing on its disinterestedness during the period of Houlihan Lokey's retention, Houlihan Lokey undertakes to amend and supplement the information contained in the Affidavit to disclose such facts.

**Approval of Terms of Engagement Under Bankruptcy Code Section 328(a)**

21. The Debtors seek approval of the Engagement Letter, including the Fee Structure contained therein, pursuant to Bankruptcy Code sections 327(a) and 328(a). Section

328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328(a) permits the compensation of professionals, including investment professionals, on flexible terms that reflect the nature of their services and prevailing market conditions for those services.

22. As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the District of Maryland, and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the Engagement Letter.

23. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Houlihan Lokey in these complex chapter 11 cases, Houlihan Lokey's substantial experience with respect to investment banking services, and the fee structures typically utilized by Houlihan Lokey and other leading investment banks that do not bill their clients on an hourly basis.

24. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by the courts. See, e.g., In re Motor Coach Industries International, Inc., et al., Case No. 08-12136 (BLS) (Bankr. D. Del. Oct. 17, 2008) (authorizing retention of Rothschild Inc. on similar terms); In re Wellman, Inc., Case

No. 08-10595 (SMB) (Bankr. S.D.N.Y. Apr. 1, 2008) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); In re TOUSA, Inc., Case No. 08- 10928 (JKO) (Bankr. S.D. Fla. Mar. 26, 2008 and Apr. 14, 2008) (same); In re FLYi, Inc., Case No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., Case No. 05- 12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Meridian Auto. Sys. – Composites Operations, Inc., Case No. 05-11168 (MFW) (Bankr. D. Del. July 19, 2005) (authorizing retention of Lazard under 11 U.S.C. §§ 327(a) and 328(a)); In re Tower Auto., Inc., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. June 15, 2005) (same); In re Oakwood Homes Corp., Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard LLC and subjecting compensation to same standard of review); In re Casual Male Corp., Case No. 01-41404 (REG) (Bankr. S.D.N.Y. March 18, 2001) (authorizing retention of Robertson Stephens, Inc., subject to 11 U.S.C. § 328(a) standard of review).

25. In light of the foregoing, and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Houlihan Lokey's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

26.     To deny the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking and financial advisors and would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new investment bankers who lack a thorough understanding of the Debtors' business and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these cases. It would require the commitment of significant resources for a newly retained investment advisor to get up to speed given the steep learning curve involved. Moreover, comparable investment bankers would charge an equivalent level of fees.

## Notice

27.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.  Notice of this motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (i) the Office of the United States Trustee, (ii) counsel to the Debtors' financing counterparties, (iii) the indenture trustee for each of the Debtors' outstanding bond issues, and (iv) all other parties identified on the Consolidated List of 20 Largest Unsecured Creditors filed herein by the Debtors.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Statement Pursuant to Local Bankruptcy Rule 9013-2

28.     Pursuant to Rule 9013-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, they will rely solely upon the grounds and authorities set forth herein.

[signatures on following page]

WHEREFORE, based on the facts and disclosures above, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto: (i) authorizing the Debtors to employ and retain Houlihan Lokey as their Investment Banker for the sale of Adfitech effective as of the Petition Date, (ii) approving the terms of Houlihan Lokey's employment and compensation as provided for under the Engagement Letter, (iii) excusing Houlihan Lokey from maintaining time records with respect to the services to be rendered by Houlihan Lokey in this case, and (iv) granting such other further relief as is just and proper.

Dated: May 4, 2009

        Thornburg Mortgage, Inc.,
        on behalf of itself and its
        affiliated Debtors and Debtors in Possession

        By: */s/ Clarence G. Simmons*
            Clarence G. Simmons, III
            Director, Senior Executive Vice President and
            Chief Financial Officer